2006 BNH 040
_____

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

In re:                                                                          Bk. No. 06-10775-MWV
                                                                                Chapter 13
David Haley and Diane Haley,
                    Debtors

*Paul A. Petrillo, Esq.*
*DEBRUYCKERE, PETRILLO & FULTON, PLLC*
*Attorney for the Debtors*

*Lawrence P. Sumski, Esq.*
*Chapter 13 Trustee*

## MEMORANDUM OPINION

Before the Court is the Chapter 13 Trustee's objection to the confirmation of the Debtors' above median plan. The Trustee argues that several of the Debtors' claimed expense deductions from disposable income should not be allowed and that the plan fails to satisfy section 1325(b)[1] in that it does not devote all available disposable income to the plan.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

---

[1] All statutory section references herein are to the Bankruptcy Code, as amended, 11 U.S.C. §§ 101 to 1532.

## BACKGROUND

David and Diane Haley (the "Debtors") filed a Chapter 13 bankruptcy petition on July 7, 2006. On the same day, the Debtors filed their schedules, Statement of Financial Affairs, Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C"), and Chapter 13 plan. The Trustee filed an objection to the Debtors' plan on August 8, 2006. At the September 8, 2006, confirmation hearing, the Court requested memoranda from the parties and scheduled a further hearing on October 2, 2006, after which the Court took the matters under advisement and ordered the Debtors to amend their schedules and Form B22C. The Debtors have filed an amended Schedule J and Form B22C.

## DISCUSSION

The Debtors filed their Chapter 13 petition after October 17, 2005, meaning that the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") applies to their case. Part III of the Debtors' Form B22C reveals them to be above median because their "annualized current monthly income" exceeds the "applicable median family income." Thus, their expenses are determined under section 1325(b)(3), which, in turn, instructs above median debtors to determine their expenses under section 707(b). Section 707(b) is popularly referred to as the "means test." Among section 707(b)(2)'s provisions are those governing which expenses an above median debtor is allowed to deduct in determining disposable income.

**I. Transportation Expenses: Ownership Costs**

The first issue before the Court concerns expenses provided for by section 707(b)(2)(A)(ii)(I), which provides,

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the

>Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief[.]

The National and Local Standards are references to "the Collection Financial Standards used by the Internal Revenue Service (the "IRS") to determine a taxpayer's ability to pay a delinquent tax liability." In re Fowler, 2006 WL 2613372, at *2 (Bankr. D. Del. Sept. 11, 2006). The Local Standards provide fixed allowable expenses for (1) housing and utilities, and (2) transportation. "The transportation Standards include two distinct components: (1) 'Ownership Costs,' which are based only on the number of cars owned by the taxpayer; and (2) 'Operating Costs & Public Transportation Costs,' which are based on the number of cars owned by the taxpayer and on the taxpayer's location." Id. The Standards allow ownership expenses of $471 for the first car and $332 for the second car.

The Debtors, on their amended Form B22C, list the $471 ownership expense for their first car and subtract the amount of their $352.80 monthly car payment, resulting in a deduction of $118.20 on Line 28. The Debtors also list the $332 ownership expense for their second car, and, because they own that car free and clear, take the entire $332 deduction on Line 29. The issue before the Court is whether the Debtors may deduct an ownership expense for a vehicle which they own free and clear of liens, i.e., a vehicle for which the Debtors make no payments.

Several courts have held that a debtor who owns a vehicle outright may not deduct an ownership expense for that vehicle. See, e.g., In re Hardacre, 338 B.R. 718 (Bankr. N.D. Tex. 2006); In re McGuire, 342 B.R. 608 (Bankr. W.D. Mo. 2006); In re Carlin, 2006 WL 2398750 (Bankr. D. Or. Aug. 18, 2006); In re Wiggs, 2006 WL 2246432 (Bankr. N.D. Ill. Aug. 4, 2006). To varying degrees, most of these courts rely on the fact that the IRS does not allow a taxpayer to deduct an ownership expense for a vehicle for which the taxpayer does not make payments. See, e.g., In re McGuire, 342 B.R. at 612–13 ("According to IRS publications regarding the application of its standards, from which the court in In re Hardacre found guidance, the ownership expense only applies to debtors who actually are obligated to pay a monthly loan or lease payment associated with a vehicle."). If the IRS does not allow such a deduction in

the absence of a car payment, so the reasoning goes, then such a deduction is not "applicable" under the language of section 707(b)(2)(A)(ii)(I). See id. at 613 ("If a debtor does not own or lease a vehicle, the ownership expense is not 'applicable' to that debtor.").

However, at least one court has questioned the degree to which section 707 incorporates the Local Standards into the Bankruptcy Code, pointing out that the IRS and the Bankruptcy Code use the ownership expense for different purposes. See In re Fowler, 2006 WL 2613372, at *4 (based on the different purposes, holding that a debtor may deduct the ownership expense for a car for which the debtor has no car payment); see also In re Farrar-Johnson, 2006 WL 2662709 (Bankr. N.D. Ill. Sept. 15, 2006) (holding that a debtor may deduct the housing and utilities monthly expense, another Local Standard, even if the debtor has no actual housing expense). The IRS uses the Local Standards as caps on actual expenditures, and if there is no actual expenditure, there is nothing to cap. See In re Fowler, 2006 WL 2613372, at *4 (citing Hon. Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 Am. Bankr. L.J. 231, 255–57 (Spring 2005)). However, section 707(b)(2)(A)(ii)(I) does not indicate that the Local Standards are to be used as caps. The Court agrees with In re Fowler that "Congress did not establish the Local Standards deduction as a cap under section 707(b)(2)(A)(ii)(I), but instead made it the actual deduction." Id. at *4. In other words, the Local Standards are "fixed allowances." Wedoff, *Means Testing in the New § 707(b)*, 79 Am. Bankr. L.J. at 257, quoted in In re Fowler, 2006 WL 2613372, at *4.

Under section 707(b)(2)(A)(ii)(I), what makes an ownership expense "applicable" is not whether the debtor is required to make a car payment or whether the deduction would be allowed by the IRS. Rather, whether an expense is "applicable" depends on the number of vehicles owned or leased by the debtor. Further, in section 707(b)(2)(A)(ii)(I), the term "applicable" modifies the phrase "monthly expense amounts specified under the National Standards and Local Standards." With the exception of the ownership expense, all other Local Standards vary depending on where the debtor resides. Thus, where a debtor resides dictates which Local Standards are "applicable." Section 707(b)(2)(A)(ii)(I) incorporates the IRS's figures, but not the IRS's publications and procedures. See In re Farrar-Johnson, 2006 WL

2662709, at *5 ("It nowhere incorporates wholesale all IRS criteria for tax collection matters."). The Court holds that the Debtors may deduct ownership expenses for a vehicle for which they do not make car payments.

**II.  401k Loan Payments**

The Trustee also objects to the Debtors' 401k loan payment listed on Schedule I as $754.16 per month. The Debtors deduct this payment on Line 55 of Form B22C under the heading "Qualified retirement deductions." The Trustee asserts, and the Debtors do not dispute, that the loan will be paid in full at or about week twenty-eight of the Debtors' sixty-month plan. To prevent the Debtors from taking the full deduction for sixty months, the Trustee proposes prorating the payments over the duration of the plan.

Line 55 instructs the Debtors to "[e]nter the monthly average of (a) all contributions or wage deductions made to qualified retirement plans, as specified in § 541(b)(7) and (b) all repayments of loans from retirement plans, as specified in § 362(b)(19)." Section 362(b)(19) applies to 401k loans, as does section 1322(f), which provides that "[a] plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay such loan shall not constitute 'disposable income' under section 1325." Prorating the loan payments over sixty months would materially alter the loan. See In re Wiggs, 2006 WL 2246432, at *3 (rejecting the proration approach). In light of the prohibition on materially altering the terms of the loan, the Court holds that the Debtors' monthly loan payment of $754.16 is properly deducted from disposable income, provided that the Debtors have furnished to the Trustee evidence of such payments. See id. The Trustee and unsecured creditors are not without remedy, though, as plan modification under section 1329 would be available at or about the time that the loan obligation is satisfied.

**III. Unreimbursed Health Care Expenses**

The Trustee objects to the Debtors' health care expenses deducted on Form B22C. Line 36 permits a deduction for unreimbursed health care expenses, instructing, "Enter the average monthly amount that you actually expend on health care expenses that are not reimbursed by insurance or paid by a health savings account." The Debtors list $310, explaining that the figure includes contributions to their daughter's health care expenses. However, Schedule I lists no dependents. Neither the instructions at Line 36 nor section 707 contain language extending permissible health care expenses beyond the Debtors or their dependents. This is not an oversight, as Congress uses more expansive language in section 707(b)(2)(A)(ii)(II), which authorizes the Line 40 deduction for "Continued contributions to the care of household or family members." Unlike Line 36 health care expenses, section 707(b)(2)(A)(ii)(II) and Line 40 explicitly allow expenses for the care and support of certain non-dependent family members. Section 707(b)(2)(A)(ii)(II) describes in great detail the persons for which a debtor may incur deductible Line 40 expenses, whereas no such detail is given with regard to Line 36 health care expenses.[2] Congress could have made the Line 36 health care expenses applicable to the same persons included in Line 40 expenses, but it did not. See Duncan v. Walker, 533 U.S. 167, 173 (2001) (differences in language among sections of a statute indicate Congress's intention to render disparate results). As no language in the Code or in Form B22C makes Line 36 health care expenses applicable to non-dependent children, those expenses are limited to those of the Debtors and their dependents. The Debtors shall amend their schedules and Form B22C.

---

[2] Section 707(b)(2)(A)(ii)(II) provides:
In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

**IV. Telecommunication Expenses**

Finally, the Trustee objects to the Debtors' telecommunication expenses, which Line 37 of the Debtors' amended Form B22C lists as $234.48.  The Debtors explain that this expense is partially attributable to their providing cellular telephone service to a parent of one of the Debtors and to the Debtors' daughter.  However, as with Line 36 health care expenses discussed above, allowable Line 37 telecommunication expenses are limited to those of the Debtors and their dependents.  Some of the Debtors' expenses in this particular case may be allowable under another expense category, such as section 707(b)(2)(A)(ii)(II), but no evidence has been brought to that effect.  The Debtors shall amend their schedules and Form B22C.

### CONCLUSION

Confirmation of the plan is denied, and the Trustee's objection to confirmation is sustained in part and denied in part.  For the reasons stated above, the Court allows the transportation ownership expense deduction and the qualified retirement deduction, and disallows the Debtors' health care and telecommunication deductions as listed.  This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

DATED this 18th day of October, 2006, at Manchester, New Hampshire.

/s/ Mark W. Vaughn  
Mark W. Vaughn  
Chief Judge